FILED
2007 Aug-09 PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| REM DIRECTIONAL, INC., and ) <br> REM PIPELINE SERVICES, INC., ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> 20/20 PAYROLL SOLUTIONS, INC., ) <br> STEPHEN TAYLOR, BRENT TIBBETTS, ) <br> ) <br> Defendants ) | Case No.  7:06-cv-1713-TMP |

MEMORANDUM OPINION

This cause is before the court on the motion for partial summary judgment filed by plaintiffs, REM Directional, Inc., and REM Pipeline Services, Inc., ("REM Directional" or "REM Pipeline") filed June 7, 2007, seeking partial summary judgment only against defendant 20/20 Payroll Solutions, Inc. ("20/20"), and on the motion to dismiss filed by defendant 20/20 on July 27, 2007. Both motions have been fully briefed and are ready for consideration.  The motions are related in the sense that the arguments advanced in support of the motion to dismiss are essentially the same arguments offered by 20/20 in opposition to plaintiffs' motion for partial summary judgment.  The parties have consented to the exercise of dispositive jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

A.  Motion for Partial Summary Judgment

Turning first to plaintiffs' motion for partial summary judgment, the court notes that the motion seeks judgment only against defendant 20/20 and only with respect to two of plaintiffs' several claims, specifically, negligence and negligent supervision.  The analytical standards

applicable to motions for summary judgment are well known. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all

justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255. The non-movant need not be given the benefit of every inference, but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

In support of their motion for partial summary judgment, plaintiffs offer excerpts from the deposition of defendant Brent Tibbetts, taken during his *individual* bankruptcy proceedings in Georgia, on February 15, 2007. Defendant 20/20 objects to Tibbetts' testimony, arguing that it cannot be treated as a deposition in this case because 20/20 was not notified of the taking of the deposition in order to participate in it, and Tibbetts was testifying in his personal capacity, not as a corporate representative of 20/20 within the meaning of Rule 30(b)(6). 20/20 is correct on both counts, but it makes no difference about the admissibility of the evidence for purposes of summary judgment. While it is true that, because 20/20 was not noticed to attend the Tibbetts deposition, it cannot be used as substantive evidence during *trial*, the sworn testimony of Tibbetts is the functional equivalent of his affidavit for purposes of Rule 56(e) and summary judgment. The rule does not require any particular form or format for affidavits, requiring only that they "be made on personal knowledge, [] set forth such facts as would be admissible in evidence, and [] show affirmatively that the affiant is competent to testify to the matters stated therein." Plainly, Tibbetts' bankruptcy testimony meets all three of those requirements. Just as an affidavit that would not be admissible at trial can be offered to support or oppose a motion for summary judgment, this sworn testimony is appropriate for consideration in support of a motion for summary judgment even if it cannot be used at trial. Of course, at trial, Tibbetts himself would testify live, presumably to the same substantive information captured in this transcript of testimony. Thus, 20/20's objection to consideration of the bankruptcy deposition transcript is not well taken and is OVERRULED.

Tibbetts testified that he was the CEO of defendant 20/20 during the relative time frame in 2006. The court does not treat Tibbetts' testimony as an admission by 20/20 because he clearly was testifying in his personal capacity, not in a corporate representative capacity. Nevertheless, as CEO of 20/20, Tibbetts was a knowledgeable witness, with personal knowledge about the matters affecting the business and the manner in which it conducted its business with plaintiffs. While Tibbetts' words cannot be attributed to 20/20, his observations are valuable evidence just as the observations of any eye witness are important.

Defendant 20/20 has offered no evidence contradicting Tibbetts' testimony. Consequently, his testimony constitutes the "undisputed facts" now before the court for purposes of assessing the motion for partial summary judgment. Those facts establish that Tibbetts was the CEO of 20/20 and defendant Taylor was the president. Defendant 20/20 was in the business of managing the payroll and tax accounts of other businesses for a fee. This entailed processing each client's payroll records related to the work hours of the client's employees in order to calculate the employees' pay and withholdings, cut the payroll checks for the client's employees, and submit to appropriate governmental agencies the proper records and payments of employment taxes. In order to fund the payroll checks and governmental tax deposits, 20/20 was given access to each client's bank accounts so that it could transfer funds needed to back the paychecks and tax payments it made on behalf of the client.

Sometime prior to 2006, plaintiffs REM Directional and REM Pipeline began using the services of 20/20 to handle their payroll accounting and recordkeeping. Under that arrangement, 20/20 was paid a fee to undertake and provide the services described above, namely to calculate the pay and withholdings of the employees of REM Directional and REM Pipeline, cut their paychecks,

5

remit to the appropriate governmental agencies all employment taxes and withholdings owed by the two plaintiffs, and maintaining proper records accounting for these transactions. Plaintiffs gave 20/20 access to their bank accounts to enable 20/20 to transfer the funds necessary to cover the issued payroll checks and tax deposits.

In early 2006, 20/20 began to experience problems when it was discovered that an employee or group of employees had devised a way to make it appear that a client's employment and withholding taxes had been paid to the Internal Revenue Service when, in fact, the payments had not been made. This was done by submitting an electronic payment to the IRS, receiving an IRS number confirming the payment, and then canceling the payment before the funds were actually transferred to the IRS. The confirmation numbers would create the appearance that employment and withholding taxes had been paid, when the funds really had not been delivered to the IRS. The employee or employees responsible for this scheme apparently converted to their personal gain the client money intended to pay taxes. Ultimately, it was discovered that the employment and withholding taxes had not been paid, and the IRS demanded payment of the taxes, interest, and penalties from 20/20's clients, including REM Directional and REM Pipeline.

In addition to this scheme, it appears that other client funds also were lost or converted by 20/20 or its employees. Tibbetts admitted that he was aware that certain funds, including funds belonging to these plaintiffs, were lost and not used for their intended purpose of covering payroll checks issued to plaintiffs' employees. Payroll checks bounced due to 20/20's failure to maintain proper control over funds transferred to it for payroll purposes. Tibbetts acknowledged that, due to the volume of work being performed by 20/20, not enough attention and supervision was given to 20/20 employees, resulting in losses of client money. When asked, "And the reason my client's

money was lost is because people weren't paying attention at the company, right?," Tibbetts responded, "It appears that way, yes." Tibbetts stated his observation that the company's failure to adequately supervise employees "contributed" to the loss of plaintiffs' money. He was asked, "The company, regardless of whether it was Mr. Taylor or you or some other person, the company itself failed to maintain adequate internal accounting controls, as well, correct?," and he answered, "Yes."

The court agrees with plaintiffs that this evidence, undisputed as it is, is sufficient to support summary judgment for plaintiffs on negligence and negligent-supervision theories against 20/20. The basic elements of a negligence action are well-known: a duty running in favor of the plaintiff, a breach of that duty, proximate causation, and damage resulting to the plaintiff. Armstrong Business Services, Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala. 2001). A duty may exist by virtue of law or by contract. "At common law, a duty of due care can accompany a contractual obligation; see Pugh v. Butler Tel. Co., 512 So. 2d 1317, 1319 (Ala. 1987). In addition, a duty of due care can arise in the absence of a contract, based on 'a number of factors, including public policy, social considerations, and foreseeability [of harm].' Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala.1993)." Id.

In this case, it is undisputed that 20/20 undertook a contractual obligation to perform certain payroll and tax-related services for plaintiffs. Tibbetts agreed in his testimony that mistakes were made at 20/20 that allowed clients' money to be converted and lost, and that these mistakes were due to inattentiveness and laxity. As a result of this inattentiveness and laxity in the supervision of its employees, 20/20 failed to carry out its contractual obligations, resulting in payrolls not being completed properly, taxes not being paid as required, and money being lost or converted, all to the detriment and damage to the plaintiffs. Although plaintiffs have not attempted to quantify the extent

of their damage, their motion for summary judgment seeks only a partial judgment on the issue of liability. They have sufficiently established that they suffered damage as an element of negligence and negligent supervision, even if the *amount* of damage is unknown at this time.

In response to the motion for partial summary judgment and in its motion to dismiss, 20/20 argues that plaintiffs' claims against it should be dismissed because Tibbetts and Taylor, the two owners of 20/20, have now entered guilty pleas to criminal conduct associated with the work at 20/20, and their plea agreement call for them to pay restitution to the plaintiffs. Further, 20/20 argues that all assets of 20/20, Tibbetts, and Taylor, including liability insurance coverage, have been forfeited to the United States, from which victims such as the plaintiffs will be compensated.

There are several answers to these contentions. First, 20/20 is a separate corporate entity from Tibbetts and Taylor, so the plea agreements entered into by Tibbetts and Taylor have no direct legal effect on 20/20's liability. Certainly, to the extent that Tibbetts and Taylor *actually pay* restitution, 20/20 would be entitled to an offset or credit against its liability to the plaintiffs, but that has not yet occurred. Despite the plea agreements and forfeiture agreements by Tibbetts and Taylor, no actual restitution has been paid to the plaintiffs. They have received no compensation for the losses they sustained due to 20/20's negligence in the handling of their payroll and tax funds. Second, it is not entirely clear that the restitution and forfeiture agreements even cover *all* of the losses suffered by plaintiffs. The restitution and forfeiture agreements appear to call for restitution only with respect to the losses plaintiffs suffered due to 20/20's failure to timely and properly pay the IRS plaintiffs' employment and withholding tax liability.[1] There does not appear to be any

---

[1] In its motion to dismiss, 20/20 itself says that Tibbetts and Taylor "agreed to restitution which encompasses all claims of clients of 20/20 Payroll Solutions *for tax payments made to 20/20 Payroll which were not properly credited to their accounts with the IRS*." [Italics added].

restitution agreement with respect to lost or converted money that was intended to pay plaintiffs' employees' payroll.  Thus, it may be that the restitution agreements executed by Tibbetts and Taylor simply do not cover some parts of the loss suffered by plaintiffs, and they are entitled to seek recovery of at least that part of their loss from 20/20.  Even construing the restitution and forfeiture agreements of Tibbetts and Taylor as "judgments" in favor of the plaintiffs, this does not relieve 20/20, a separate contractor and tortfeasor, of its liability to the plaintiffs.

By separate order, the court will grant partial summary judgment as to liability only with respect to plaintiffs' negligence and negligent supervision claims.  The court will deny the defendant's motion to dismiss the complaint against it.

DONE this 9th day of August, 2007.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE