IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| REM DIRECTIONAL, INC., and ) | |
| REM PIPELINE SERVICES, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.  7:06-cv-1713-TMP |
| ) | |
| 20/20 PAYROLL SOLUTIONS, INC., ) | |
| STEPHEN TAYLOR, BRENT TIBBETTS, ) | |
| ) | |
| Defendants ) | |

## MEMORANDUM OPINION

This cause is before the court on the motion for partial summary judgment filed by plaintiffs, REM Directional, Inc., and REM Pipeline Services, Inc., ("REM Directional" and "REM Pipeline" or collectively "REM") on September 28, 2007. Plaintiffs seek partial summary judgment against individual defendants Brent Tibbetts and Stephen Taylor. The motion has been fully briefed. The parties have consented to the exercise of dispositive jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

FACTS AND BACKGROUND

The motion at issue seeks judgment against the individual defendants, Tibbetts and Taylor, with respect to two of plaintiffs' claims, negligence and negligent supervision.[1] The facts, viewed in the light most favorable to the nonmovants, in this case Taylor and Tibbets, are as follows:

Tibbetts and Taylor founded the defendant corporation 20/20 Payroll Solutions ("20/20") in 2002. Tibbetts was the CEO, and Taylor was the president. Defendant 20/20 was in the business of managing the payroll and tax accounts of other businesses for a fee. This entailed processing each client's payroll records related to the work hours of the client's employees in order to calculate the employees' pay and withholdings, cutting the payroll checks for the client's employees, and submitting to appropriate governmental agencies the proper records and payments of employment taxes. In order to fund the payroll checks and governmental tax deposits, 20/20 was given access to each client's bank accounts so that it could transfer funds needed to back the paychecks and tax payments it made on behalf of the client.

Sometime prior to 2006, plaintiffs REM Directional and REM Pipeline began using the services of 20/20 to handle their payroll accounting and record-keeping. Under that arrangement, 20/20 was paid a fee to provide the services described above, namely to calculate the pay and withholdings of the employees of REM Directional and REM Pipeline, cut their paychecks, remit to the appropriate governmental agencies all employment taxes and withholdings owed by the two plaintiffs, and maintain proper records accounting for these transactions. Plaintiffs gave 20/20

---

[1] This court already has granted partial summary judgment in favor of the plaintiffs on the same claims against the corporate defendant, 20/20 Payroll Solutions.

access to their bank accounts to enable 20/20 to transfer the funds necessary to cover the issued payroll checks and tax deposits. Taylor set up the bank accounts that held 20/20 payroll funds, and he signed at least one of the REM employee's paychecks during the relevant time.

In early 2006, it became known that some agent, employee, or group of employees at 20/20 had devised a way to make it appear that a client's employment and withholding taxes had been paid to the Internal Revenue Service when, in fact, the payments had not been made. This was done by submitting an electronic payment to the IRS, receiving an IRS number confirming the payment, and then canceling the payment before the funds were actually transferred to the IRS. The confirmation numbers would create the appearance that employment and withholding taxes had been paid, when the funds really had not been delivered to the IRS. The employee or employees responsible for this scheme apparently converted to their personal gain the client money intended to pay taxes. On at least one occasion after a business newspaper reported that 20/20 had sent clients confirmation numbers even though the tax payments had been rescinded, Tibbetts sent REM a fax providing confirmation numbers and asserting that tax payments had been made. Ultimately, it was discovered that the employment and withholding taxes had not been paid, and the IRS demanded payment of the taxes, interest, and penalties from 20/20's clients, including REM Directional and REM Pipeline.

In addition to this scheme, it appears that other client funds also were lost or converted by 20/20 and/or its agents or employees. Tibbetts admitted that he was aware that certain funds, including funds belonging to these plaintiffs, were lost and not used for their intended purpose of covering payroll checks issues to plaintiffs' employees. Payroll checks bounced due to 20/20's failure to maintain proper control over funds transferred to it for payroll purposes. Tibbetts

5

acknowledged that, due to the volume of work being performed by 20/20, not enough attention and supervision was given to 20/20 employees, resulting in losses of client money.  When asked, "And the reason my client's money was lost is because people weren't paying attention at the company, right?," Tibbetts responded, "It appears that way, yes."  Tibbetts stated his observation that the company's failure to adequately supervise employees "contributed" to the loss of plaintiffs' money.  He was asked, "The company, regardless of whether it was Mr. Taylor or you or some other person, the company itself failed to maintain adequate internal accounting controls, as well, correct?," and he answered, "Yes."

The court found the evidence sufficient to support summary judgment for plaintiffs against 20/20 on negligence and negligent-supervision theories.  In addition to the evidence considered by this court in the previous adjudication of the motion for partial summary judgment, the court now has before it the criminal informations and guilty plea agreements by which both individual defendants were convicted of wire fraud.  Taylor pled guilty on or about April 18, 2007, to "knowingly and willfully" engaging in a scheme to defraud clients of 20/20.  Tibbetts entered a guilty plea on or about June 7, 2007, admitting that he knew of the felonious actions at 20/20, and that he concealed the fraud by falsely reporting to 20/20 clients that tax payments had been made to the IRS, when he knew that they had not been made.

## DISCUSSION

Plaintiffs now seek summary judgment on the same theories of negligence and negligent supervision against the individual defendants.  Tibbetts and Taylor argue that they cannot be

personally liable for the negligent acts of the corporation under Alabama Code § 10-2B-6.22(b), which limits the liability of shareholders of a corporation by providing that "[n]either a subscriber nor a shareholder of a corporation is personally liable for the acts or debts of a corporation." The defendants' argument is without merit for obvious reasons. The statute does not purport to shield any corporate officer from his own acts, whether tortious or criminal, and the defendants have not offered any authority that supports such a broad and over-reaching interpretation of the statute.

The elements of a negligence action are: a duty running in favor of the plaintiff, a breach of that duty, proximate causation, and damage resulting to the plaintiff. Armstrong Business Services, Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala. 2001). A duty may exist by virtue of law or by contract. "At common law, a duty of due care can accompany a contractual obligation; see Pugh v. Butler Tel. Co., 512 So. 2d 1317, 1319 (Ala. 1987). In addition, a duty of due care can arise in the absence of a contract, based on 'a number of factors, including public policy, social considerations, and foreseeability [of harm].' Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala.1993)." Id.

As this court noted in its opinion granting summary judgment against 20/20, it is undisputed that 20/20 undertook a contractual obligation to perform certain payroll- and tax-related services for plaintiffs, and that 20/20 negligently supervised the agents or employees who committed the wrongful acts. Tibbetts and Taylor founded the corporation and ran the business, with the help of approximately 20 employees. They were in charge of the day-to-day operations of the company, corresponded with the REM clients, and oversaw the work of the 20/20 employees. It is without dispute that Taylor and Tibbetts occupied supervisory positions over the employees of 20/20 with respect to the *fiduciary* handling of plaintiffs' funds. Their guilty pleaas establish that, at the very

least, they negligently failed to supervise those employees, even though they were aware that client money, including money belonging to these plaintiffs, had been converted and embezzled. The fiduciary nature of the business, involving the handling of clients' funds in trust, created a duty, not only on the part of 20/20, but also on the part of Taylor and Tibbetts, to assure that such money was handled properly and not stolen.

In response to the instant motion for summary judgment, defendants argue that the testimony given by Tibbetts in the bankruptcy proceedings, in which he clearly admitted that the oversight at 20/20 was inadequate, was sufficiently vague that the court should infer that the negligent acts are attributable only to the corporation, and not to the individual defendants. That argument might have some teeth, were it not for the clear admissions of both Tibbetts and Taylor in pleading guilty to the wire fraud charges. They cannot on the one hand admit they are "in fact guilty of the crimes charged," and on the other hand assert that the wrongful acts were committed by some other agents or employees of the corporation. Even the case cited by the defendants, Howell v. J&J Wood, Inc., slip copy, Civil Action No. 3:06-cv-417-WHA, 2007 WL 2012820 (M.D. Ala. July 6, 2007), makes clear that corporate officers can be personally liable for their own acts of negligence. That court stated:

> "'In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.'" Consol. Constr. Co. of Ala. v. Metal Bldg. Components, L.P., ___ So. 2d ___, 2007 WL 80799, at *3 (Ala. Jan. 12, 2007) (quoting Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So. 2d 775, 775 (Ala.1986)); cf. Inter-Connect, Inc. v. Gross, 644 So. 2d 867, 869 (Ala.1994) ("It is a well settled rule in this state that a person is liable for torts which he or she commits, regardless of the capacity in which that person acts."). Alabama courts have applied this rule within the specific realms of intentional torts and negligence.

> See Galactic Employer Servs., Inc. v. McDorman, 880 So. 2d 434, 438-39 (Ala. Civ. App. 2003) (providing a brief survey of Alabama cases in which the aforementioned rule is applied to cases involving either intentional torts or negligent acts). Applying this rule to the present case, it makes no difference whether Jones is an officer or part-owner of J & J Wood in determining whether he is personally liable for negligent acts in which he participated.

2007 WL 202820 at *2. The court went on to find that § 10-2B-6.22 could shield the individual defendant only for claims "relating to acts in which he was not involved personally." Id. at *3.

In this case, Tibbets has testified that mistakes were made at 20/20 that allowed clients' money to be converted and lost, and that these mistakes were due inattentiveness and laxity. As a result of this inattentiveness and laxity, 20/20 failed to carry out its contractual obligations, resulting in payrolls not be completed properly, taxes not being paid as required, and money being lost or converted, all to the detriment and damage to the plaintiffs. At the same time, both Tibbets and Taylor have pleaded guilty to felony charges in connection with the scheme to defraud 20/20 clients, clearly implicating their own personal involvement in the loss and/or conversion of plaintiffs' money. In support of their motion for partial summary judgment, plaintiffs offer excerpts from the deposition of defendant Tibbetts, taken during his individual bankruptcy proceedings in Georgia, on February 15, 2007, the criminal informations and guilty pleas relevant to the two individual defendants, and an article published in the Austin Business Journal in 2006.[2] When viewed in its

---

[2] Defendants have moved to strike the article as inadmissible hearsay. The court agrees that the article is hearsay to the extent that it is offered to prove the truth of any matter asserted therein; however, the article is admissible to show that the defendants had knowledge of the allegations of wrongdoing in the company they managed. Accordingly, the motion to strike (court document # 43) is DENIED. In any event, the court has not considered the article as substantive evidence in reaching its conclusions regarding the motion for partial summary judgment. Instead, the decision is based upon the testimony of Tibbetts, and the evidence from the criminal proceedings

totality, the evidence clearly indicates that the two individual defendants were — at the very least — negligent in carrying out their duties to the REM plaintiffs, and negligent in supervising any other employees or agents who may have been involved in the scheme.

Defendants further argue that plaintiffs are not entitled to summary judgment against the individual defendants because the defendants have entered into restitution and forfeiture agreements with the government, and that plaintiffs would receive a "double recovery" if they prevail on these claims. This argument was addressed in the court's previous opinion resolving the motion for partial summary judgment against 20/20, and need not be repeated here. Clearly, however, to the extent that Tibbetts and Taylor *actually pay* restitution, they would be entitled to an offset or credit against this judgment. Further, as noted previously, the restitution and forfeiture agreements appear to call for restitution only with respect to the losses plaintiffs suffered due to 20/20's failure to timely and properly pay the IRS; there does not appear to be any restitution agreement with respect to lost or converted money that was intended to fund plaintiffs' employees' paychecks. Thus, it may be that the restitution agreements executed by Tibbetts and Taylor simply do not cover some parts of the loss suffered by plaintiffs, and they are entitled to seek recovery of that additional loss.

## CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that REM's motion for partial summary judgment against

---

that has been submitted by the plaintiffs.

defendants Taylor and Tibbetts on claims of negligence and negligent supervision is due to be granted. A trial is necessary for the assessment of damages only.

A separate order will be entered in accordance with the findings set forth herein.

DONE this 7th day of January, 2007.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE